Welcome to the 9th Circuit. We've got multiple cases up for argument today, so please be efficient, keep track of your time. I'm going to call the cases in the order that they're listed on the calendar, and after the first two cases are argued, we're going to take a break. Before I call the first case, once again, Judge Nelson and I are pleased to welcome Judge Seiler. He sat with us yesterday as well, and will be wrapping up, at least for this sitting, his service with us today. And Judge Seiler is from the 6th Circuit. Welcome. Thank you. Glad to be here. All right. The first case for argument is Rogalinski v. Meta Platforms. Good morning. May it please the Court, my name is Andrew Tapp. I am counsel for the appellant in this matter. I would like to reserve some time for rebuttal, approximately a few minutes at least. All right. I'll try to help you out, but keep your eye on the clock as well. Yes, Your Honor. As this panel is aware, this is a First Amendment case brought against what was formerly Facebook, what's now Meta Platforms, which is a little bit unusual. It's a private party, and what's happened here is the appellant has alleged that Meta engaged as a state actor with federal government, specifically the White House, in censoring protected speech of both Mr. Rogalinski and a putative class. This speech all pertained to COVID-19. The censorship was alleged to have begun in about February of 2021, which was after the Biden administration had taken over. And since that time, there were a number of posts between, I believe it was April and June of 2021, which the appellee decided to cover, remove, or otherwise... Let me ask you something, counsel. How is this case any different than O'Hanley? Because there we talked about flagging posts and said that that doesn't mean just merely by flagging posts doesn't mean that you're ceding control over content moderation. This is more than just flagging the posts. This is twofold. One, it's complete concealment of the posts as well. So it's one thing to be able to put a little note at the bottom saying this may be factually misleading. It's something different to hide it so that essentially your post is visible only to you and not to anyone else. That is effectively censorship. But that's still action that Meta took. So it's action that Meta took, but it's action at the behest of the White House. Where's the allegation that the White House said hide this specific post? So obviously when this case was filed, this case was filed July 19th, 2021. It was precipitated by a July 15th press conference by Press Secretary Pisachi, in which she indicated in responding to a reporter's question about how these companies can be coerced, she indicated that they're in regular contact and communication and under pressure. Okay. Let's take that piecemeal because if we were to hold in your favor that every time the Press Secretary said they're in contact with a private company, we would expand the First Amendment to an almost unfathomable way. That can't be the rule. There has to be something more here. I agree. My position here, however, is that it's not just that the White House is expressing opinion. Certainly they're allowed to advocate for their positions. They're allowed to go out to the bully pulpit and say, we believe this company... And they're allowed to call private actors and tell them what their opinion is. Absolutely. What they're not allowed to do is coerce. Okay. So where's your allegation of coercion? That's, I think, what would be helpful. So the allegations generally outline that these actions were taken only because the executive branch, the federal government, had pressured Facebook into it. That's what I'm looking for, is what is your allegation? It can't be enough to just broadly allege coercion. What is your allegation that there's coercion here? Because right now, all I'm seeing in the complaint, and maybe you could have put other allegations in, but all I'm seeing in the complaint is they picked up the phone, they called them, they had a conversation. What is the coercion? Did they threaten to take away government funds? Did they threaten to start a government investigation? What is the allegation of coercion? So obviously, we weren't able to conduct discovery. So I'm a little bit behind the eight ball in saying exactly what those conversations were. But again, counsel, I've got to go back to Hanley, because we've already said that repeated communications between Twitter and the government here, between Meta and the And the degree of communications in this case, your allegations fall short of even the allegations in Hanley. So what do you have beyond just repeated communications? Encouragement for misinformation to be flagged or hidden in some cases. Certainly, Your Honor. Now, as I mentioned a moment ago, discovery would have borne out what we saw in the Missouri v. Biden case. As this panel has certainly reviewed at this point, it's a major case. Obviously, it was revised within the past two weeks. Can I ask you about Missouri v. Biden? Yes, sir. There, the plaintiffs sued the federal government. Yes. And two states were involved in that case. Does that put that case on different footing than what we have here? You chose, for whatever reason, you chose not to go after the government. You chose to go after Meta. Doesn't that put this on a different footing? So I don't believe that it puts it on a materially different footing. I think it's the other side of the same coin. I think that, frankly, those states could have gone after Meta and Twitter. Their case is much broader. They have a lot more platforms than just Meta. Obviously, we're a little bit more financially restricted. So we went after what had actually happened to Mr. Rogolinsky, which was Facebook. Now, again, that case is the other side of the same coin. What we're looking at there is that Missouri v. Biden found that there was coercion, found that the nexus test was satisfied using a second circuit standards, and determined that, yes, these activities taken on behalf of the federal government by platforms such as Meta did, in fact, violate the First Amendment. Now, I believe it's an interlocutory order. I think that's a preliminary injunction. What's your best case that you're relying upon from this circuit or the Supreme Court? I think the Warren v. Kennedy case talks a little bit about it. I don't have a better case overall than Missouri v. Biden. But Warren, and this is an earlier this year case, I think it was May of this year, this circuit decided that Ms. Warren, Senator Warren's statements to Amazon about Mr. Kennedy's book was not enough to be able to essentially turn it into a state actor, Amazon into a state actor. The difference there is that Senator Warren is a single senator, and then I mentioned that in the opinion. And specifically in that case, it says it would be different if this was coming from the executive branch because there's significantly more power with the executive branch. So I do believe that case supports our position. But that's not the holding of that case, as you said. It might be different. Correct. And, Your Honor, the interesting thing about that was, and I think correctly, the Ninth Circuit said, look, there's no real power here by Senator Warren. She can go out, she can advocate, she can maybe write some laws and introduce some things into the Senate, but she doesn't have power over things like the SEC. And so the White House is a little bit different. They're in charge of all of those regulatory enforcement agencies who also put together the regulations that companies like Meta are subject to. So this is very different than that case, but I think that the holding in that case is very pertinent to this because the circumstances described in what is dicta fit what we're looking at here today. Now, as to the prior case that the panel asked me about earlier, I think it was clear enough, even in this case here, the amount of evidence that Missouri v. Biden had. Missouri v. Biden was permitted to conduct discovery and to be able to flesh out their case. What we're looking at is essentially a summary judgment determination based upon the pleadings only. I believe that we pled adequately that there was a nexus between Facebook and the federal government. And we had a statement from the federal government acknowledging they had had communication. Now, you can't be privy to what that communication is without the power of So in order to be able to do this in an expeditious way, you have to file a lawsuit. So I believe that where we sit now, how do we we got to be a gatekeeper? I mean, if we if we allow this to go forward and that wasn't the issue before the Fifth Circuit, when it came up to the Fifth Circuit, there'd already been I take it expedited discovery. That was all handled by the district court. So we're in some ways we're not reviewing the same issue that Missouri v. Biden is. This is a motion to dismiss. And the question is, which the Fifth Circuit didn't have before it, have you met that threshold out of the gateway? Now, I don't know whether the district court in the Fifth Circuit got it right or not, but this is very troubling. If we allow you to go forward on these and even just get discovery on these generalized allegations, where does it stop? I don't know that it's actually as generalized as the panel suggests. Well, I mean, you you've said there's regularly in touch with these platforms. Yes, they're flagging problematic posts for Facebook. Yes, they've proposed changes to the platform. Yes, sir. They've asked them to remove harmful, violative posts. I don't I don't see I don't see the you know, some of the some of the facts that came out in Missouri v. Biden. Why didn't you amend your complaint? Because we've had him for about a month and a half, your honor. So I and we did actually attempt to see what we could that was publicly available through Pacer of Missouri v. Biden. I've looked through the pleadings. I believe at one point last year we had reached out to one of the councils. But there's there's as many attorneys there. Did you ask to amend your complaint below after it was dismissed? We have not. We were, I believe, all the way through briefing at this point and believed. I mean, even still with the additional allegations, I don't think that the additional allegations materially change it. It does provide more evidence. But we're here on a 12 B six motion to dismiss. And the question really is, how much evidence does a plaintiff need to come to court with? And when we're talking about concealed allegations of coercion, for one, that's the key to the analysis, isn't it? It's the key to the nexus allegations. Yes, I think there's some allegations are the other tests that you can utilize this joint action. But for our purposes, I don't think that you need to plead with any more specificity than we did. We said, Look, we have a government entity who has talked to a private entity about conducting a particular exercise which limits free speech. So we have a an unconstitutional action taken at the behest of the federal government after significant coercion. And I think that the evidence eventually is going to support that. What is the significant coercion? So after I believe it was later, and this is talked about Missouri B. Biden. There's a comment about how the press secretary had three different meetings where she the first one was the one on the 15th. Two meetings later, they say, Look, President Biden is very concerned about what these social media platforms are doing. And specifically, we're looking into what can be done on that with Section 230. That's a threat. It's coercion. At that point in time, you're looking at somebody who has the power to enforce. That's not in your complaint. It didn't exist at the time of the complaint, and we were not aware of it till more recently. That comment was made by the press secretary after you filed your complaint, right? So is to my recollection, the 15th of July was a Thursday. Friday was the 16th. This complaint was drafted the 17th. The 18th was filed Monday, the 19th. So it the comments had come. They may have come over the weekend, but the plaintiff in this particular matter, the appellant was not. But when you say the comment was we're going to see what can be done with Section 230, that's meaning we're gonna look at taking legislative action to amend 230 and take away immunity or what? Not legislative, because at that point, it's regulatory. And so if they're looking at at amending regulations again, that's that's all executive branch. Um, and you have a case that shows that statements by press secretary gives rise to cause of action. I can't think like this. Your Honor, I can't think of a single case specifically that says that comments by press secretary. Obviously, a press secretary is in the unique position to have to answer questions for the press pool, and they're allowed to advocate, which is, I think, what most press secretaries do. I can't think of a separate one that indicates standing there. I would like to reserve my last three minutes for rebuttal. All right. Thank you. Good morning. My name is Kasdan Mitchell. I represent Meta Platforms Incorporated. This appeal presents the straightforward issue of whether Mr. Rogelinsky can allege a constitutional First Amendment violation against Meta Platforms, a private company, based on allegations that at their very best suggest communications with and encouragement between the federal government and a private actor. Under either of the two theories that Mr. Rogelinsky proceeds under, joint action or close nexus, those allegations do not come anywhere close to satisfying the high bar of converting private action into state action for purposes. Well, can I ask you about that? Because you say they don't come anywhere close, and yet we have a district court in the Fifth Circuit and three judges on the Fifth Circuit who have held otherwise. Now, help me understand what the distinguishing factor is with Missouri v. Biden. Is it just that they had more, they were able to do discovery? No, Your Honor. I think there are several distinctions from the Missouri case. The first is the one that Your Honor mentioned earlier this morning, that that was a case against the federal government, not against a private actor. And that's important, because if you listen to the oral argument in Missouri v. Biden, General Devine for the state of Missouri said this case would be different if we had brought it against private companies. What difference does that make if we accept the joint action theory? So under, so thank you, Judge Wynn. First of all, I would say in Missouri v. Biden in footnote 20, the Fifth Circuit said they are passing no judgment on the joint action test. So that theory was not at issue at all. But then how did they get there if they didn't go through the joint action? Because you still had to prove, I mean, it wasn't action that the government took. At the end of the day, I mean, it wasn't like the government stepped in and stepped at the keyboard for MEDA. There was still, MEDA was actually doing the action, even in Missouri v. Biden, that was alleged to be a violation of the First Amendment. That's right. And what the court in the Fifth Circuit found there, or found that the district court had not abused its discretion finding, was that the federal government had coerced the platforms. And I'll say, Your Honor, we dispute the findings of the Fifth Circuit. But even taking them for what they are, the allegations were far more robust there. And it was in pursuit of a coercion theory. What was in the complaint? I guess, is this a problem with the district, not a problem, but is the difference here at the district court level where basically the Fifth Circuit district court, the Louisiana district court just allowed discovery on a lower threshold than the district court here? Or were there allegations specifically in that case? Can you point me to Yes, there are numerous, far more specific allegations in that complaint that are here. I would specifically direct the court to paragraph 186 of the, I believe it's the second amended complaint, it was the operative complaint there. And there Missouri alleged that there were threats from senior government officials, the context of a history of such threats in the form of legislation, regulation, or agency action. And then they went on to list in a number of subparagraphs specific statements from officials that, at least in the district court's view, survived the motion to dismiss standards. So it was on that record along with multiple, I mean there were 400 plus allegations in that complaint, multiple allegations that allowed the district court to conclude there that the discovery could go forward on the preliminary injunction. Why shouldn't we allow the plaintiffs to go back and amend their complaint? If, well, first of all, let me ask about the Supreme Court. The Supreme Court has, I guess, stayed administratively and extended the Should we just wait and see how the Supreme Court comes out on that? I don't think so because even if Missouri v. Biden was preceded in this court, I don't think it would control the outcome here. Just to return to the initial point I was making that you had asked in your question earlier about the fact that this was against the federal government. So there are no cases that I'm aware of where under a compulsion theory, a court has found that a private actor is liable for the actions of the government. And that makes sense, right? Because you don't want to, if they were acting kind of on their own will, they were being forced, you then wouldn't want to hold them liable. And this court said this, and it was an unpublished decision in Doe v. Google, but it also in the Sutton v. Providence case made the point that in a private actor case, there has to be coercion plus something more. And so I don't think that even the holding of Missouri v. Biden, if it was a holding of this court, would compel the conclusion here. So there's no reason to wait. Of course, the court has just Did the plaintiff in this case ask for and was denied an opportunity to amend? No, Your Honor. What does the record show with regard to amendment? In the motion to dismiss in the district court, there was a footnote where the plaintiff said if there is a technical deficiency, then he would seek leave to amend and even put technical, not substantive. And then after the dismissal was with prejudice, Mr. Rogolinsky did not appeal the decision to dismiss with prejudice, did not seek leave to amend, did not seek leave to amend after filing a 28-J letter regarding the Missouri v. Biden decision. And I didn't hear from the podium requests for leave to amend here today. Of course, the court can exercise its discretion to remand and allow leave to amend, but in light of the clear forfeiture of that relief, we would recommend that the court not take that case, that course. In addition, there are no allegations in any of the briefing and argument today that suggests that any amendment would clear the high bar of alleging state action here. Why not? Why couldn't they go? I mean, the Missouri v. Biden just came out I mean, it was just the beginning of the month, wasn't it? It was, I have the exact date. I'm not sure the exact date. October 3rd. I believe it was the beginning of October. So why shouldn't they, I'm not sure if we can get there because I don't know what the procedural posture would be, but why shouldn't they be allowed to amend to look at allegations that were in Missouri v. Biden? I mean, there's some deeply troubling facts there. Like, does Meta understand that? What happened here was really unprecedented. Whether it has a cause of action or not, what the White House was doing and what Meta allowed the White House to do was really unprecedented. I do think there is, you know, there's a lot of evidence in the record in the Missouri v. Biden case. I think some of the evidence that the Fifth Circuit relied on was taken out of context. But in any event, even today, Mr. Rogolinski hasn't asked this court for permission for leave to amend and don't think that that would be a proper force. That's a different record in the Fifth Circuit case. That's right, Your Honor. A few other comments about the Missouri v. Biden case. Back to your question, Judge Wynn, about joint action. In that case, again, the Fifth Circuit expressly was not passing on the joint action test. And I could just spend a few minutes talking about the lack of joint action allegations here. So in cases where the Supreme Court has even not found the existence of joint action, there were far more robust allegations of a joint enterprise. Here, Mr. Rogolinski has not alleged that there were federal government employees working for Facebook to flag posts. He has not alleged shared facilities or shared corporate governance or even that the federal government inured any specific benefit from the conduct that Meta took. Those are the allegations that were present, for example, in the Blum nursing home case in the Supreme Court, which there, the Supreme Court did not even find sufficient to state a cause of action under a joint action theory. The second theory that Mr. Rogolinski presses is the close nexus theory. And his briefing kind of goes back and forth. This morning he was talking about coercion in the district court at the excerpts of Record 38. Mr. Rogolinski conceded that the statements for the press secretary were, quote, clearly suggestions. And there just is not, there are no allegations of coercive threats or the threats of adverse consequences on these pleadings. So to the extent he is, in fact, pursuing a coercion theory, the facts just don't bear that out. I think what's troubling here, and again, I don't know whether the plaintiffs have alleged it properly, but is that you have the White House weighing in, and I think this is where the Fifth Circuit went, the White House weighing in on what is misinformation and what is not. And it's very content-based. And that, I think, is the troubling First Amendment aspect that I don't think we've seen before. I mean, this isn't just something about flagging nefarious posts. It's not like if there were terrorist claims being made or terrorist propaganda being put out there. That's not what this is. This was an issue of public health, and the White House was weighing in with its thumb, saying this is truth and this is not truth. And that's what seems to put this in a little bit different bucket. Now, maybe it's not enough to get past our prior precedent on this, but it was so content-based from the White House, and meta it was so content-based, it does open up, I think, a different question under the First Amendment than some of our prior cases. I don't think it opens a meaningfully different question from that that this court confronted in the O'Handley decision. So there was expressed communication between the agency of the California government about, not COVID misinformation, but about election misinformation. And in fact, the allegations in that complaint, which were not sufficient to state a claim, included specific allegations about Mr. O'Handley. So there was a chart in the complaint where his Twitter handle was tagged by name, and the post was flagged, you know, word-for-word content. And even with those specific allegations, this court found that the allegations weren't sufficient to state a claim. And there was an informative quote related to the lack of coercion, notwithstanding the specificity there, which is not present here, that I just quote for this court. So it says, government officials do not violate the First Amendment when they request that a private intermediary not carry a third-party speech so long as the officials do not threaten adverse consequences if the intermediary refuses to comply. That was from O'Handley at 1158. And there are no allegations of any adverse consequences on the face of this complaint. And under a direct application of O'Handley, this court should affirm the district court's dismissal. Your Honors, at the end of the day, the decision to take action against Mr. Rogolinsky's post was Mehta's. And this court and the Supreme Court have articulated two key principles that I believe drive this court's decision. The first is that allegations of state action require a high bar, and the purpose is to protect individual liberty. The second axis is that pleading standards matter. Twombly and Iqbal had to mean something. You have to allege facts that take your claim from the possible to the plausible. And here, Mr. Rogolinsky's single factual allegations of a statement from the press secretary saying that we're meeting with social media companies and encouraging them to take certain actions do not clear either the pleading standard or the high bar for pleading state action. Unless the court has any further questions, I'll defer the balance of my time and ask that the court affirm the sound decision of the district court dismissing this case. Thank you, counsel. May it please the court again. To be clear, we would be willing and would like to amend the complaint to add what we have learned in Missouri v. Boston. I don't know what your vehicle is to do that. I mean, you haven't brought that before us. You haven't said that there was an abuse of discretion in denying you to amend. You never asked to amend. I don't know. Maybe there is one. What would be that vehicle? The vehicle, I think, is newly discovered evidence, and I think it would have to be to set aside a judgment under Rule 54 off the top of my head. But I think that— Well, you've got to preserve the issue, and you haven't done that. Well, the issue is the evidence. And again, the court has correctly circled back and said, What evidence do you have? But we're looking at this from a 12B6 standpoint, which is when you come to court, how can you know what the communications are between the White House and Facebook? But there were allegations in the Louisiana case that went further, and I mean, I think that's the struggle here is when you read the face of your complaint, and I know you were moving quickly. This isn't necessarily a criticism, but you were probably operating under the best you could at the time. But we do have a gatekeeping function, and if we said that this complaint on its face alleged a complaint of joint action, I just don't know what the limiting factor would be. I think that the complaint was very clear in a number of different paragraphs. We put them into the reply, where we said, Look, these actions were taken— Do you have allegations of threats? I think—so we don't have a specific allegation that says this is the exact threat. It was not known at the time. Not even allegations sufficient for an inference, correct? No, I disagree with that. Okay, tell me what it is. to reach an inference of a threat. Our allegations were that the White House compelled compliance with its directives to META. It does not specifically say this is the threat. How did it do that? It's more by inference than it is by direct language, ma'am. But did you allege that they compelled—I never saw an allegation of compelling them. Can you give me a paragraph? Because I didn't see that either. I didn't reach that inference. If you have a paragraph or two to direct me to so I can review it after, I would appreciate that. I recall. I know we mentioned it in paragraph 56. It states, Furthermore, the specific actions compelled by the government is not suggested. And as counsel indicated, Press Secretary Psaki did say that they had made suggestions. But it was a lot more than suggestions. And what we had stated was in our complaint was that this was the tip of the iceberg. There were a lot of communications between the White House. And what we know standing here today— Not enough. Not enough under our handling. Repeated communications are not enough. No, you're right. The government does what it's going to do. It's an advocate for certain positions, right, for the protection of the public or whatever policy goals it wants to accomplish. And that's where your allegations really stayed. Now, what I'm hearing you say today is give us a chance to conduct discovery, and we can basically meet the allegations that the Fifth Circuit deemed sufficient. So that claim is not just— There's Tuomly and Iqbal. You still have to have a plausible claim before you can go forward to discovery. I believe as it's pled, there's a plausible claim. I think that eventually we've seen facts that have proven that to be the case. And I think that there's a difference between coercion and persuasion. It's discussed at great length, and I won't go over it because I don't have the time, in Missouri v. Biden. But this is coercion, and I believe it's pled is coercion. Advocating does not cause the type of email communications that we see in Missouri v. Biden. So we would ask that the court overturn the lower decision, permit the case to at least conduct some discovery, as we've asked from the beginning. And I appreciate your time. All right. Thank you very much, both sides, for your very helpful arguments today. The matter is submitted.
judges: Siler, NGUYEN, NELSON